BARBER v. SMEALLIE et al.   (No. 343–82.)

(Supreme Court, Appellate Division, Third Department.   January 6, 1915.)

Appeal from Trial Term, Montgomery County.

Action by William E. Barber against P. Henry Smeallie and another. Judgment for plaintiff, and defendants appeal. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

William H. Foster, of Syracuse (Andrew J. Nellis, of Albany, of counsel), for appellants. Daniel Naylon, Jr., of Schenectady, and D. L. Snook, of Amsterdam, for respondent.

PER CURIAM. Judgment and order affirmed, with costs. All concur, except

WOODWARD, J. I dissent. The complaint in this action, while in form setting up a cause of action under the Employers' Liability Act (Consol. Laws 31, §§ 200–204), was in fact tried upon that part of

the complaint which alleged that "defendants' said employés were ignorant, incompetent, and of insufficient understanding to understand and appreciate the danger of moving said clutch and starting the said machinery and said pump while plaintiff was at work upon the same," and that, while plaintiff was engaged in making repairs upon a pump in the basement of the mill where this accident occurred, "one of the defendants' workmen other than plaintiff pulled a clutch or part of the machinery in defendants' said mill, which was on the first floor above where plaintiff was at work, and without notice to the plaintiff, which set the said pump in motion," and that "said employé of the defendants who moved the said clutch was ignorant, wholly incompetent, and not of sufficient understanding or capacity to work in the defendants' said mill, and in particular in and about the said clutch, and unable to appreciate or understand the danger that would come from the moving of the said clutch and thereby setting the machinery in motion that connected with the said pump, and the danger to the plaintiff in so doing, and the defendants were negligent and unmindful of their duty to the plaintiff in employing the said employé and having him about the said mill where he might and was liable to move the said clutch; that the said clutch was at a place in defendants' said mill where the same could be reached and easily moved by ignorant employés of the defendants." It was, therefore, an action at common law, and it was so stated by the learned trial court in submitting the case to the jury. The gravamen of the action was the alleged negligence of the defendants in not using proper care in the selection of reasonably competent fellow servants, and the questions presented on this appeal are to be governed, not by any of the modern legislative enactments, but by the rules of the common law.

The facts as presented in behalf of the plaintiff, and which the jury have found, establish fairly that the plaintiff had been in the general employ of the defendants, paper manufacturers, for a considerable length of time, and that about five months prior to the accident, which occurred on the 25th of November, 1912, he was placed in charge of the beater room of the plant. He testified that at this time he told the superintendent that he would take the room, but that there should be a change made, so that some one would be employed who could speak English, "so as to help me, because I did not feel myself safe to have to work without one man that could speak the English language." "I told him I did not feel safe, as I had to work around among machinery like that, and not having a man to help that I could talk to that would understand what I told him. I could not make these fellows understand." It is claimed that conversations of this kind took place several times, and that the superintendent promised to employ a competent assistant, but that he failed to do this, and the evidence is largely taken up with the subject of the superintendent's failure to employ some men who were recommended by the plaintiff.

It appears that the beater room was on the first floor; that there were pumps in the basement used for pumping up the paper materials into the beaters; that these pumps became clogged from time to time, and that it was among the duties of the plaintiff to go into the basement, ei-

ther alone or with an assistant, to clean out these pumps; that the pumps were connected with a gearing and a clutch, the clutch being operated by a lever in the beating room; and that when the employés wanted materials they set the pumps in operation by pushing the lever in the proper direction. On the occasion of the accident it appears the plaintiff found that one of the pumps was not working, and he left the beater room and proceeded to the basement to clear the pump. One "Tony" saw him start, and indicated by a motion of his head that he would accompany the plaintiff; but the latter signaled him not to come, and whether it was apparent or known to "Tony" that the plaintiff was going into the basement, or to some other part of the plant, does not clearly appear. The plaintiff opened up the pump and put his hand inside to clear the clogging material, and while so engaged "Tony," at the direction of another employé, pushed the lever and threw in the clutch, starting the pump and working the injury for which the plaintiff complains.

There is no evidence in the case that "Tony" did not understand fully all of the purposes of the clutch lever and the results which would follow the operation of the same, so far as it related to the movement of the machinery. The plaintiff furnished some evidence that he had once asked "Tony" to bring him a string, and that he brought some papers, and that on another occasion he asked for a shovel and was furnished a pail; but there is not a particle of evidence that any of the employés were incompetent to perform the comparatively simple duties which they were employed to perform, or that they did not know and understand just what would happen in the event of the clutch being thrown into contact with the moving machinery. It must be evident, therefore, that this accident happened because the plaintiff failed to let "Tony" understand that he was at work upon this pump, or that "Tony" negligently responded to the request of another fellow servant and started the pump, and, in either event, the defendants at common law would not be liable; for in the one case it would be a lack of reasonable care on the part of the plaintiff, and in the other the negligence of a fellow servant. It is true, of course, at common law, that the master owes the duty of exercising reasonable care to employ reasonably competent fellow servants for the performance of the work assigned, but lack of linguistic skill is not incompetence in and of itself. It should be shown that by reason of a lack of capacity to understand the language the employé was unfitted for the performance of the particular duties. There is not a particle of evidence here to show that "Tony" did not understand the work which he was called upon to perform; not a particle of evidence that he did not know exactly what would happen by the throwing of the clutch; not a particle of evidence to show that he did not appreciate the danger to any one employed in cleaning out the pump. The mere fact that he failed to understand a request for a shovel, or that he brought papers when the plaintiff asked him for a string, does not show that he was incompetent, or lacked understanding sufficient for the general work to which he was assigned, or that he would not have acted differently if the plaintiff had taken the trouble to indicate to

him that he was going into the basement for the purpose of cleaning out the pump.

The testimony indicated that it was customary generally for the plaintiff to take "Tony" with him when he was to clean out the pump, and when on the occasion of the accident the plaintiff motioned "Tony" not to follow him, without giving him any further instructions, the inference is at least a fair one that "Tony" understood this as an indication that the plaintiff was not to clean the pumps, and the understanding would not do entire discredit to his intelligence. But, however this may be, if the servant sustaining an injury through the unskillfulness or insufficiency of numbers or otherwise of fellow servants, or defects in machinery or conveniences furnished by his employer, has the same knowledge, or means of knowledge, of the unskillfulness and deficiencies referred to as his employer, he cannot sustain an action for the injury, but will be held to have voluntarily assumed all the risks of the employment incurred, as they were, by the want of skill and incompetency of those employed with him, or the defective machinery used in the work. Wright v. N. Y. Central Railroad Co., 25 N. Y. 562, 566, 567, and authorities there cited; Maltbie v. Belden, 167 N. Y. 307, 312, 60 N. E. 645, 646 (54 L. R. A. 52), and authorities there cited. In the latter case the court say:

"A servant assumes, not only the risks incident to his employment, but all dangers which are obvious and apparent, and so, if he voluntarily enters into or continues in the service, having knowledge of, or the means of knowing, the dangers involved, he is deemed to assume the risks and to waive any claim for damages against the master in case of personal injury."

Here the plaintiff himself testified that he knew and appreciated the alleged incompetency of the fellow servants and of the conditions surrounding the work. He was in charge of the room, and he claims that he had asked for other helpers which had been promised him; but he continued in the employment, knowing that no changes had been made and he has no right to recover in this action upon the theory which was submitted to the jury. Moreover, it is not sufficient to charge the master for injuries to his servant that others of his employés were unskillful or incompetent, or the machinery, etc., unsafe and unfit for the purposes, unless the injury complained of resulted from these causes. If it was occasioned, notwithstanding these defects, by the negligence of a fellow servant, the master is not responsible. Wright v. N. Y. Central Railroad Co., 25 N. Y. 562, 567, and authorities there cited. In the case at bar the accident did not occur by reason of any incompetency on the part of "Tony." It occurred because "Tony" used the machinery and appliances in a perfectly proper manner to produce the results which were desired, but at a time when the plaintiff happened to be engaged in a work which required the pump to be at a standstill. If he knew the plaintiff was at work on the pump, it was either wanton or negligent for him to start the pump; but the master was not responsible for such action, unless he had knowledge of such continued carelessness on the part of the servant as to give rise to the inference that the servant was in law incompetent. No distinction exists in principle between permitting the use of defec-

tive machinery and permitting employes to habitually disregard the safeguards that have been provided to insure the safe operation of a plant.

The defendants' duty to the plaintiff, so far as reasonable care would accomplish it, was to employ only competent men in the operation of their plant. "A competent man is a reliable man; one who may be relied upon to execute the rules of the master, unless prevented by causes beyond his own control. Hence incompetency exists, not alone in physical or mental attributes, but in the disposition with which a servant performs his duties. If he habitually neglects these duties, he becomes unreliable, and, although he may be physically or mentally able to do well all that is required of him, his disposition toward his work and toward the general safety of the work of his employer and to his fellow servants makes him an incompetent man." Coppins v. N. Y. C. & H. R. R. Co., 122 N. Y. 557, 564, 25 N. E. 915, 916 (19 Am. St. Rep. 523). This is the most favorable definition of incompetency which we are able to find, in so far as the plaintiff is concerned, and the evidence fails to establish such incompetency. The evidence does not show that "Tony" was not capable of doing all of the work he was required to do, both physically and mentally, and there is no evidence that he had ever been found negligent in the discharge of any of the obligations of an employé. The most that we know of him is that he failed to perform a couple of errands satisfactorily; that he misunderstood what the plaintiff wanted. But errors in understanding, even where the parties are supposed to speak a common language, are not of unfrequent occurrence, and there is absolutely no evidence that the fellow servants of the plaintiff had done or failed to do anything before this accident which, if known to the defendants, would have imposed upon them the obligation of discharging any of them and filling their places with others.

The charge of the court is erroneous in many particulars, some of which are challenged; but the case went to the jury upon a theory which is not supported by the evidence, and the verdict ought not to stand.

The judgment and order appealed from should be reversed.